IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CHARTIS PROPERTY CASUALTY
  COMPANY

    v. : Civil Action No. DKC 13-1479

GEORGE W. HUGUELY, V

**MEMORANDUM OPINION**

Presently pending and ready for review in this insurance case are three motions. First, Defendant George W. Huguely, V moves to stay this case during the pendency of the criminal proceeding against him in the Commonwealth of Virginia. (ECF No. 24). This motion was later joined by Sharon D. Love, Personal Representative of the Estate of Yeardley R. Love. (ECF No. 28). Second, Plaintiff Chartis Property Casualty Company ("Chartis") filed a motion for summary judgment. (ECF No. 8). Third, Defendant filed a motion to deny or defer considering Plaintiff's motion for summary judgment. (ECF No. 25). The issues have been fully briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, Defendant's motion to stay the case will be granted. The remaining motions will be denied without prejudice to renewal once the stay is lifted.

## I. Background

This case involves the intersection of three actions, all of which have Huguely as the defendant: a criminal case, a civil case, and an insurance case.

### A. Criminal Case

On February 22, 2012, a jury in the Circuit Court for the City of Charlottesville, Virginia found Huguely guilty of second-degree murder in the May 2010 death of Yeardley R. Love. Huguely petitioned for appeal of his conviction to the Court of Appeals of Virginia, claiming multiple errors in his trial. On April 23, 2013, the Court of Appeals granted Huguely's petition as to two issues: (1) whether the circuit court violated Huguely's right to counsel by forcing him to proceed with trial in the absence of his retained counsel of choice; and (2) whether the circuit court erred in refusing to strike for cause Juror 32, whose answers during *voir dire* revealed serious doubts about her impartiality. (ECF No. 24-2). On June 14, 2013, a three-judge panel of the Court of Appeals added further issues for appeal: (1) whether the circuit court violated Huguely's right to a trial by a fair and impartial jury by refusing to allow the defense to ask questions during *voir dire* that were directly relevant to whether prospective jurors could remain impartial; (2) whether the right to a fair and impartial jury was violated by refusing to strike a number of jurors who were

not stricken for cause (as opposed merely to Juror 32); and (3) whether the circuit court did not adequately instruct the jury about the meaning of "malice" under Virginia law. (ECF No. 24-3). The Court of Appeals declined to hear Huguely's other allegations of error, including that the evidence was insufficient to support a conviction of second-degree murder. An independent investigation of the Court of Appeals docket reveals that the appeal was fully briefed as of September 30, 2013. There is no indication when oral argument will occur. *Huguely v. Commonwealth*, No. 1697-12-2.

**B. Civil Case**

On April 26, 2012, Sharon D. Love, as administrator of the estate of Yeardley R. Love, brought a wrongful death suit against Huguely in the Circuit Court for the City of Charlottesville. (ECF No 1-1). That complaint was amended on April 30, 2013 and seeks nearly $30 million dollars in compensatory damages and an additional $1 million dollars in punitive damages. (ECF No. 1-2, Case No. CL-2012-130). Defendant represents that he requested a stay of the case pending the completion of his criminal case on July 17, 2012 and Ms. Love has recently done likewise. The circuit court has not yet acted upon these requests.

### C. Insurance Case

The case in this court concerns whether Plaintiff, an insurance company, has no duty pursuant to certain insurance policies to defend or indemnify Huguely in the Civil Case. Huguely's mother and step-father purchased a Homeowners policy that became effective on January 25, 2010. (ECF No. 1 ¶ 24). The policy would pay for the costs to defend, and any subsequent damages incurred, from the actions of the insured or a "family member." "Family member" is defined as "a person related to [the insured] by blood, marriage or adoption that lives with [the insured]." (*Id.* ¶ 31). Coverage does not extend to personal injury or property damage resulting from any criminal, willful, intentional or malicious acts. (*Id.* ¶ 35). Importantly for the present dispute, the policy sets out the insured's duties after a loss, to include submitting to a separate examination under oath as often as Chartis reasonably requires. (*Id.* ¶ 36).

Beginning on May 22, 2012, Chartis advised Huguely that it was undertaking an investigation of the Civil Case and informed Huguely of their respective obligations under the insurance policy. Chartis advised Huguely that it would be contacting Defendant in the future to schedule an examination under oath. (*Id.* ¶ 51). Chartis sought to examine Huguely to understand better whether it was contractually obligated to provide

4

coverage given that the insurance contract explicitly excludes intentional and/or criminal conduct from its coverage. As the altercation between Huguely and Love had no other witnesses, Huguely is the only available party to help Chartis understand its obligations and craft a defense. (*Id.* ¶¶ 55-57). Additionally, Chartis sought to examine Huguely about his residency, as Huguely was then a student at the University of Virginia in Charlottesville, living separately from either of his parents. (*Id.* ¶¶ 58-59).

Huguely, through counsel, has consistently refused to submit to an examination under oath, asserting his Fifth Amendment right against self-incrimination. Chartis seeks a declaratory judgment that Huguely's refusal to cooperate with Chartis's investigation as required by the insurance contract constitutes a material breach resulting in actual prejudice, and that therefore Chartis has no duty to defend or indemnify Huguely in the Civil Case. Chartis did not allege that it had no duty to defend or indemnify Huguely because of his intentional and/or criminal acts. The complaint was filed on May 20, 2013 and Plaintiff moved for summary judgment on July 3, 2013. (ECF No. 8). Defendant moved to deny or defer consideration of that motion, (ECF No. 25), and at the same time moved to stay the case pending the outcome of the Criminal Case (ECF No. 24). Defendant's motion to stay was joined by Sharon

5

D. Love, plaintiff in the Civil Case, on September 12, 2013. (ECF No. 28).

## II. Defendant's Motion to Stay

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Maryland v. Universal Elections, Inc.*, --- F.3d ---, 2013 WL 3871006, at *7 (4th Cir. 2013) (*quoting Landis v. N. Am. Co.,* 299 U.S. 248, 254 (1936)). It is settled that it is not unconstitutional to force a litigant to choose between invoking the Fifth Amendment in a civil case, thus risking a loss there, or answering the questions and thus risking subsequent criminal prosecution. *See Baxter v. Palmigiano*, 425 U.S. 308, 318-19 (1976). Although it is permissible to force a party to choose, it is also constitutional to save him from this difficult choice by staying the civil case while the criminal case is pending. In determining whether a stay should be entered, courts must weigh multiple factors:

> (1) the extent to which the issues in the criminal case overlap with those in the civil case; (2) the status of the criminal case including whether the defendants have been indicted; (3) the private interest of the plaintiffs in proceeding expeditiously with the civil litigation; (4) the private interests of, and the burden on, the

> defendant; (5) the interest of the courts;
> and (6) the public interest.

*United States v. Hubbard*, No. AW-13-344, 2013 WL 1773575, at *2 (D.Md. Apr. 24, 2013) (*quoting In re Royal Ahold N.V. Sec. & ERISA Litigation*, 220 F.R.D. 246, 253 (D.Md. 2004)). The party seeking a stay bears the burden of establishing the necessity of a stay. *Clinton v. Jones*, 520 U.S. 681, 708 (1997).

A balancing of these factors leads to the conclusion that a stay is appropriate so long as it is tied to the resolution of the Criminal Case or a decision to proceed in the Civil Case, whichever occurs sooner. First, the issues of the Criminal Case and the Insurance Case are very similar. Both involve the actions of Huguely on or about May 2-3, 2010 that ultimately resulted in the death of Yeardley R. Love. While the Criminal Case and Civil Case are concerned with Huguely's acts, the Insurance Case is concerned presently with Huguely's refusal to answer questions about those acts. Nevertheless, they are still closely related. Further, as pointed out by the complaint, one ground for refusing coverage is if the injury for which the insured faces liability stems from the insured's intentional and/or criminal acts. (ECF No. 1 ¶¶ 53-57). At that point, the issues in the Criminal Case and the Insurance Case become identical, counseling in favor of entering a stay.

7

The second factor, the criminal case's status, somewhat disfavors a stay. Defendant is correct that courts are loath to stay a civil case when a criminal case is in the pre-indictment stage. *See Hubbard*, 2013 WL 1773575, at *2 (collecting cases). But while this case is post-indictment, it is also post-trial, post-verdict, and post-sentencing, and currently on appeal. Courts that have evaluated the question of whether to stay a civil case while the related criminal case is on appeal tend against granting a stay because the defendant has been tried, convicted, and sentenced and there is only a mere possibility that a successful appeal might lead to a new trial that could require invocation of defendant's Fifth Amendment rights. *See Gen. Dynamics Corp. v. Selb Mfg. Co.*, 481 F.2d 1204, 1214 (8th Cir. 1973); *Bd. of Cnty. Comm'rs of Cnty. of Adams v. Asay*, No. 11-cv-2238-PAB-KLM, 2012 WL 6107949, at *2 (D. Colo. Dec. 10, 2012); *In re Terrorist Attacks on Sept. 11, 2011*, No. 03 MDL 1570, 2011 WL 5913526, at **4-5 (S.D.N.Y. Nov. 22, 2011); *Sparkman v. Thompson*, No. 08-01-KKC, 2009 WL 1941907, at *2 (E.D.Ky. July 6, 2009). This case is slightly different in that the Court of Appeals of Virginia accepted multiple issues for appeal. Balancing the posture of this case weighs slightly against imposition of a stay.

The third factor is informed by the unique circumstances in the present situation: there are *three* cases pending that turn

on the same issues.  These circumstances favor a stay.  Chartis certainly has a strong interest in a resolution of this case as it will potentially determine whether it must defend and indemnify Huguely in the Civil Case.  Huguely submits that both he and Love have requested the state court to stay the Civil Case while the Criminal Case is pending.  If the state court grants that stay, then there is little interest in proceeding expeditiously in this case as the Civil Case - for which Huguely seeks Chartis's services - will have been halted.  On the other hand, if the state court decides to continue with the Civil Case, then Chartis has a strong interest in obtaining a declaration of its rights vis-à-vis Huguely in the Insurance Case.  Given the still pending request to stay the Civil Case, and Love's consent to stay this case, the third factor points in the direction of a stay, with that stay at least partially tied to the progress of the Civil Case.

With respect to the fourth factor, Huguely generally has an interest in avoiding the conflict between waiving his Fifth Amendment rights and, in essence, compromising his defense in this matter.  But because he has been tried, convicted, and sentenced, Huguely's vow of silence based on his Fifth Amendment's rights is contingent on his appeal being granted and a new trial being ordered, the possibility and timing of which are speculative at best. *See Sparkman*, 2009 WL 1941907, at *2.

These competing interests result in the fourth factor being neutral as to the imposition of a stay.

The fifth factor, the court's interest, favors granting a stay. Despite the general interest in keeping litigation moving, resolution of the Criminal Case may clarify the issues for which Chartis is claiming relief: Huguely's criminal acts could become a reason for denying coverage. Furthermore, finalizing the Criminal Case could lead to Huguely cooperating with Chartis. As discussed above, however, if the state court denies the stay request and continues the Civil Case forward, the resolution of the Insurance Case is critical to Plaintiff's interest, regardless of the outcome of the Criminal Case, because of Plaintiff's strong interest in not having to continue to defend a case that it may not have to. These circumstances favor granting a stay.

Finally, the public's only interest in this case is a general interest in its efficient and just resolution. Thus, this factor is neutral in light of those goals.

The relevant factors lead to the conclusion that a stay is appropriate. Therefore, Defendant George W. Huguely, V's motion to stay this case is GRANTED. This stay will remain in effect until the sooner of two outcomes: (1) the resolution of the criminal case *Commonwealth of Virginia v. George W. Huguely, V*, Circuit Court of the City of Charlottesville, Case Numbers 11-

102-01 and 11-102-05, currently on appeal to the Court of Appeals of Virginia, Case Number 1697-12-2; or (2) the motions to stay are denied in the civil case *Sharon D. Love, Administrator of the Estate of Yeardley Love, Deceased v. George W. Huguely, V*, Circuit Court of the City of Charlottesville, Case Number CL-2012-130.

### III. Conclusion

For the foregoing reasons, Defendant George W. Huguely, V's motion to stay this case shall be granted. For administrative purposes, the case will be closed while the stay is in place. A separate order will follow.

/s/
DEBORAH K. CHASANOW
United States District Judge
